# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GEORGE KENNETH SCHOPP | § | |
| | § | Civil Action No. 4:20-cv-868 |
| v. | § | Judge Mazzant |
| | § | |
| QUICK CAPITAL FUNDING, LLC | § | |
| | § | |

## FINAL DEFAULT JUDGMENT

Pending before the Court is Plaintiff George Kenneth Schopp's Motion for Default Judgment Against Defendant Quick Capital Funding, LLC (Dkt. #9). Having considered the Motion, the Court finds that the Motion should be **GRANTED in part**. Plaintiff is entitled to a default judgment against the defaulting defendant in the amount of $27,400.

## BACKGROUND

The case concerns violations of the Telephone Consumer Protection Act ("TCPA"). Beginning on October 7, 2019, George Kenneth Schopp began receiving telephone calls from Quick Capital Funding, LLC and its agents for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services (Dkt. #1 ¶ 1.2). The calls were allegedly made through an automatic dialing system (Dkt. #1 ¶ 5.12). Plaintiff continued to receive such calls on 16 occasions between October 7, 2019 and November 5, 2020 (Dkt. #9 p. 4).

More than thirty-one days before the first call, Plaintiff registered his cell phone number on the National Do Not Call Registry (the "Registry") (Dkt. #1 ¶ 5.6). The purpose of the Registry is for users to indicate their desire not to receive telephone solicitations at the registered telephone number. *See* 47 C.F.R. § 64.1200(c)(2).

Plaintiff alleges Defendant violated Sections 227(c) and 227(b)(1)(A)(iii) of the TCPA (Dkt. #1 ¶ 8.3; Dkt. 9 p. 3). The TCPA's purpose is to prohibit telemarketers from soliciting

residential and wireless telephone subscribers to the Registry (*See* Dkt. #9 p. 3). Section 227(b)(1)(A) prohibits the use of automatic phone dialing systems to make any call to a wireless number without prior express consent or for an emergency purpose (Dkt. #1 ¶ 1.1). Some of the calls that Plaintiff answered began with silence before an agent subsequently came onto the line (Dkt. #1 ¶ 5.12). This practice is allegedly consistent with the use of automatic phone dialing systems (Dkt. #1 ¶ 5.12). In addition to registering his cell phone number on the Registry, Plaintiff asserts that he never consented to being placed on a call list and voiced his opposition to Defendant's agents over the telephone (Dkt. #1 ¶ 5.1; Dkt. #1 ¶¶ 5.13-5.15). None of the calls at issue were placed by Defendant for "emergency purposes" (Dkt. #1 ¶ 5.2).

On November 6, 2020, Plaintiff sued Defendant for violating Sections 227(c) and 227(b)(1)(A)(iii) of the TCPA (Dkt. #9 p. 13). Defendant was served a copy of the Complaint on November 9, 2020 but never responded or otherwise defended itself (Dkt. #3). On January 27, 2021, the Clerk entered default against Defendant (Dkt. #8).

On February 19, 2021, Plaintiff moved for a Default Judgment and seeks $48,000 in statutory damages and $503 in costs, for a total of $48,503 (Dkt. #9 p. 13). There was no response.

**LEGAL STANDARD**

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. FED. R. CIV. P. 55. The Fifth Circuit requires a three-step process for securing a default judgment. *New York Life Ins v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Next, an entry of default may be entered by the clerk when the default is established

by affidavit or otherwise. FED. R. CIV. P. 55(a). Third, a plaintiff may then apply to the clerk or the court for a default judgment. FED. R. CIV. P. 55(b); *New York Life Ins.*, 84 F.3d at 141.

Entry of default judgment is within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Although entries of default judgment are generally disfavored in the law, entry of a default judgment is not an abuse of discretion when a defendant fails to answer a complaint. *Lacey v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000); *Bonanza Int'l, Inc. v. Corceller*, 480 F.2d 613, 614 (5th Cir. 1973).

## ANALYSIS

The Court finds that Plaintiff is entitled to a default judgement. To determine whether to enter default judgement, courts in the Fifth Circuit apply a three-part analysis: (1) whether entry of default judgment is procedurally warranted, (2) whether there is a sufficient basis for judgments in the pleadings, and (3) what form of relief, if any, a plaintiff should receive. *Lindsey*, 161 F.3d at 893. The Court applies this framework and finds that default judgment is appropriate.

### I. Default Judgment Is Procedurally Warranted

Default judgment is procedurally warranted because Defendant never answered or otherwise defended itself in response to the Complaint (*See* Dkt. #3–4 (Summons executed); Dkt. #9). The Court considers six factors:

> [1] whether material issues of fact are at issue; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

First, there are no material issues of fact because Defendant has not answered the Complaint (*See* Dkt. #9). The Fifth Circuit holds that once a default judgment has been entered, the plaintiff's well-pleaded factual allegations are accepted as true, except regarding damages. *See*

*U.S. For Use of M-CO Const., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Second, Defendant's failure to respond prejudices Plaintiff because it halts the adversarial process. *See Cunningham v. Crosby Billing Services, Co.*, Civ. A. No. 4:18-cv-00043-ALM-CAN, 2018 WL 6424792, at *3 (E.D. Tex. Oct. 14, 2018). Third, the grounds for default judgment are clearly established when Defendant does not participate in any part of the adversarial process including responding to summons, complaint, entry of default, or motion for default judgment. *See Holladay v. OTA Training, LLC*, No. 3:14-cv-0519-B, 2015 WL 5916440, at *4 (N.D. Tex. Oct. 8, 2015). Fourth, Defendant has not offered any evidence that its unresponsiveness is due to a good faith mistake or excusable neglect. Fifth, a default judgment is not unusually harsh in this case as Defendant has had ample opportunity to respond after receiving notice of this action. *See, e.g., Cunningham*, 2018 WL 6424792, at *3 (entering default judgment against defendants who failed to respond to an action brought under the TCPA). Finally, there is no indication that Plaintiff has contributed to the delay of this action or otherwise given the Court any reason to set aside default judgment.

The Court finds that the six *Lindsey* factors weigh in Plaintiff's favor. 161 F.3d at 893. As such, default judgment is procedurally warranted.

## II. There is a Sufficient Basis for Default Judgment in the Pleadings

Next, the Court reviews the pleadings to determine if there is a sufficient basis for judgment. *See Nishimatsu Constru. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Plaintiff alleges that Defendant's actions violated Sections 227(c) and 227(b)(1)(A)(iii) of the TCPA (Dkt. #1 ¶ 8.3; Dkt. 9 p. 3).

The TCPA was created to protect residential telephone users' privacy rights to avoid receiving unwanted telephone solicitations. *See* 47 U.S.C. § 227(c)(1). Telephone solicitation is

defined by the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). Section 227(c)(5) of the TCPA allows a private right of action for "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the federal Do Not Call Registry. 47 U.S.C. § 227(c)(5).

Plaintiff registered his cell phone number on the National Do Not Call Registry (Dkt. #1 ¶ 5.6). After Plaintiff's phone number was on the registry for more than 31 days, Plaintiff received unwanted calls. Plaintiff asserts Defendant called Plaintiff's registered phone on 16 occasions within a 12-month period (*See* Dkt. #1 ¶ 1.2). These calls were made without Plaintiff's consent and persisted through Plaintiff's demands to stop (*See* Dkt. #1 ¶ 1.3). In support of this claim, the pleadings offer dates and the nature of the telephone calls, generally offers to loan Plaintiff money (*See* Dkt. #1 ¶ 5.9–5.15). Given Defendant's default, the Court takes Plaintiff's allegations as true, and finds a sufficient basis for Defendant violating Section 227(c) of the TCPA by calling Plaintiff's registered phone on 16 occasions within a 12-month period. *See Nishimatsu*, 515 F.2d at 1206 (well-pleaded facts in a default judgment are taken as true).

Plaintiff also contends Defendant used an automatic dialing system in violation of Section 227(b)(1)(A)(iii) of the TCPA (Dkt. #1 ¶ 5.12). This section prohibits using an automatic dialing system to call any telephone number assigned to a cellular telephone service unless the call is made for an emergency purpose or with prior consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii). However, a recent Supreme Court ruling called into question the constitutionality of this section. *See Barr v. American Association of Political Consultants, Inc. (AAPC)*, 140 S. Ct. 2235 (2020). In *AACP*, the Supreme Court held that the government-debt exception violated the First Amendment and decided to sever the government-debt exception from

5

the rest of Section 227(b)(1)(A)(iii). *See* 140 S. Ct. at 2355. In turn, this Court analyzed whether violations of Section 227(b)(1)(A)(iii) *outside the government-debt exception* became unconstitutional from the moment the government-debt exception was enacted in 2015. *See Cunningham v Matrix Fin. Services*, Civ. A. No. 4:19-cv-896, 2021 WL 1226618, at *9–10 (E.D. Tex. Mar. 31, 2021) (emphasis added). The Court ruled that distinguishing government-debt collection calls from other types of automated calls violated the First Amendment because the Section *in its entirety* became a content-based restriction on speech. *Cunningham*, 2021 WL 1226618, at *3. The legal significance of this ruling is that any automated calls made between the enactment of the government-debt exception (2015) and the moment the *AAPC* ruling was handed down (July 2, 2020) do not violate Section 227(b)(1)(A)(iii).

Here, fourteen of the sixteen allegedly automated calls occurred within this time period and are thus non-violations (Dkt. #1 ¶¶ 5.9–5.11). The Court must examine the two calls made after July 2, 2020 to determine whether they violated Section 227(b)(1)(A)(iii) (Dkt. #1 ¶ 5.11). These two calls began with silence before an agent subsequently came onto the line (Dkt. #1 ¶ 5.12). The pleadings assert that this pattern is consistent with the use of an automatic telephone dialing system (Dkt. #1 ¶ 5.12). This Court found a sufficient basis for such claim where the plaintiff alleged that "a period of silence is indicative of an automatic dealer." *Cunningham*, 2018 WL 6424792, at *4 (quoting *Barnes v. Santander Consumer USA, Inc.*, No. 1:14-cv-01941, 2015 WL 12777362, at *1 (N.D. Ohio June 15, 2015)).

Defendant has not come forward with any evidence that these calls were made for "emergency purposes" (Dkt. #1 ¶ 5.2). Rather, the pleadings contend the calls were part of an effort to offer loans to the called party (Dkt. #1 ¶ 5.4). Plaintiff contends he is not Defendant's customer and never provided written consent to be called (Dkt. #1 ¶ 5.5). Plaintiff's decision to

6

register on the National Do Not Call Registry is further affirmation of his desire not to consent to such calls (*See* Dkt. #1 ¶ 1.2). Based on these facts, the Court finds that there is a sufficient basis for two claims under 227(b)(1)(A)(iii) of the TCPA.

### III. Forms of Relief

Plaintiff requests the Court award a total of $48,503 in statutory damages and costs (*See* Dkt. #9 at p. 13). The TCPA provides that a consumer may be awarded $500 per call made in violation of each of the sections violated. *See* 47 U.S.C. §§ 227(b)(1)(A)(iii); 227(c). Treble damages ($1,500) may be awarded for willful or knowing violations. *See* 47 U.S.C. §§ 227(b)(3)(C).

#### a. Statutory Damages

Plaintiff's Complaint establishes that Defendant violated Section 227(c) on 16 occasions and Section 227(b)(1)(A)(iii) on 2 occasions (*See* Dkt. #1). Plaintiff alleges Defendant willfully and knowingly violated the TCPA by "spoofing" the calling phone numbers and ignoring Plaintiff's pleas to stop calling (*See* Dkt. #1 ¶¶ 5.8, 5.13) ("spoofing" refers to having a phone's Caller ID show a local area code to deceive a call receiver into answering a call).

The FCC has interpreted "willful or knowing" under the TCPA "as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *Tex. v. Am. Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001). Defendant's actions seem like the type of conduct that Congress intended to prohibit (*See* Dkt. #9 p. 3). Defendant knew or should have known its conduct violated the statute because Plaintiff was on the Registry, did not have prior business with Defendant, and requested to not be called (Dkt. #1 5.6, 7.3). Given Defendant's default, the Court, in its discretion, may award treble damages for each willful of knowing violation of the TCPA. 47 U.S.C. § 227(b)(3)(C).

After considering the facts of this case, the Court finds treble damages appropriate. As each of the 16 phone calls willfully violated Section 227(c) and 2 of the phone calls also violated 227(b)(1)(A)(iii), the statutory damages total $27,000 ($1,500 for each of the 18 willful violations).

### b. Costs

In addition to statutory damages, Plaintiff also requests that the Court award litigation costs in the total amount of $503. This includes the $400 filing fee and $103 for serving the Defendant. In accordance with Federal Rule of Civil Procedure 55(b), Plaintiff submitted an affidavit detailing costs (Dkt. #9, Exhibit 1 at p. 3).

Federal Rule of Civil Procedure 54(d) gives a court discretion to award costs to a prevailing party. *See* FED. R. CIV. P. 54(d). 28 U.S.C. "§ 1920 defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Section 1920 allows a court to tax as costs certain enumerated categories of fees, including "[f]ees of the clerk and marshal," and "[d]ocket fees under section 1923." 28 U.S.C. § 1920.

Plaintiff is only entitled to recover the $400 filing fee (Dkt. #1) (receipt number 0540-8094767). The service fees are listed as $0 in the proof of service documents (Dkt. #3–4). Plaintiff is not entitled to recover fees on private service of process. *Cunningham*, 2018 WL 6424792, at *11 (citing *Vanderbilt Mortg. & Fin., Inc. v. Flores*, No. CIV.A. C-09-312, 2011 WL 2160928, at *21–22 (S.D. Tex. May 27, 2011)). Accordingly, the Court grants in part Plaintiff's request.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff George Kenneth Schopp's Motion for Default Judgment Against Defendant Quick Capital Funding, LLC (Dkt. #9) is hereby **GRANTED in part**.

It is further **ORDERED** that George Kenneth Schopp is awarded $27,000 in statutory damages and $400 in costs which shall be paid by Defendant Quick Capital Funding, LLC.

**IT IS SO ORDERED.**
**SIGNED this 26th day of July, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE